UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOWARD PARTELL, JR. and ) <br> BONNIE PARTELL, individually, ) <br> and on behalf of all others similarly situated, ) <br>   ) <br>   Plaintiffs, ) <br>   ) Case No. 1:12-cv-00376 <br> v. ) <br>   ) Removed from: <br> FIDELITY NATIONAL TITLE INSURANCE ) <br> CORPORATION, as Successor in Interest to ) Supreme Court of the <br> LAWYERS TITLE INSURANCE ) State of New York, County of Erie <br> CORPORATION,[1] ) Index No. I2012001088 <br>   ) <br>   Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>RESTATED MOTION TO DISMISS THE AMENDED COMPLAINT</u>**[2]

Pursuant to Fed. R. Civ. P. 15(a)(3), Defendant Fidelity National Title Insurance Corporation ("FNTIC") respectfully submits the following Memorandum of Law in support of its Restated Motion to Dismiss the Amended Complaint.

**<u>PRELIMINARY STATEMENT</u>**

Following the removal of this action from state court, Plaintiffs filed an Amended Complaint, which includes some new factual allegations and abandons their fourth cause of action

---

[1] Plaintiffs' original Complaint mistakenly identified Fidelity National Title Insurance Services, LLC ("FNTIS") as the Successor in Interest to Lawyers Title Insurance Corporation ("Lawyers Title"). The Amended Complaint corrects that mistake, identifying the actual successor in interest to Lawyers Title, Fidelity National Title Insurance Corporation ("FNTIC"), as the defendant. As such, Plaintiffs have, by amendment, dismissed their claims against FNTIS. Moreover, the Amended Complaint concedes federal jurisdiction is appropriate in this case under the Class Action Fairness Act of 2005 ("CAFA"). (*See* Am. Compl. ¶ 3).

[2] By filing this Motion to Dismiss, FNTIC does not waive – and hereby expressly reserves – its right to seek to compel arbitration of Plaintiffs' individual claims based on the arbitration clause of the loan policy placed at issue in the Amended Complaint.

for breach of implied contract. The amended allegations fail to cure the deficiencies identified in the original Complaint. Still alleging that Lawyers Title failed to provide them with a discounted premium rate for title insurance in connection with the refinancing of their home mortgage, Plaintiffs Howard and Bonnie Partell assert claims on behalf of themselves and a putative class for alleged violation of § 349 of the New York General Business Law ("GBL § 349") and common law claims for money had and received and unjust enrichment. Accepting the allegations of the Amended Complaint as true for purposes of this Motion only, Plaintiffs' claims are legally untenable and the Amended Complaint must be dismissed in its entirety for at least three reasons.

*First*, because Plaintiffs' state law claims all relate to an alleged failure to charge the proper insurance premium, yet Plaintiffs do not allege they exhausted available administrative remedies before filing this lawsuit, their claims are premature and must be dismissed.

*Second*, Plaintiffs' GBL § 349 claim also must be dismissed because an alleged failure to disclose information – which is all that the Plaintiffs allege here – is actionable under the statute only if the information in question is unknown to, and could not reasonably have been obtained by, the plaintiff. Here, the Plaintiffs actually possessed all of the relevant information about their own prior mortgage and their title insurance premium, and they are conclusively presumed as a matter of law to have had knowledge of the potential availability of a discounted refinance rate since that rate, and the circumstances in which it applies, are contained in a publicly filed and publicly available Rate Manual.

*Third*, the § 349 claim and the common law claims for money had and received and unjust enrichment must be dismissed under New York's "voluntary payment doctrine." Under that doctrine, where – as here – a plaintiff makes a payment with full knowledge of the relevant

2

facts, that plaintiff is barred from recovering the payment no matter how the cause of action is denominated.

## ALLEGATIONS OF THE AMENDED COMPLAINT

As alleged in the Amended Complaint, two types of title insurance policies are commonly available in New York: (1) "lender's policies," which insure mortgage lenders against defects in the title to the mortgaged property, and (2) "owner's policies," which protect the buyers of the property. (Am. Compl. ¶ 14). Lenders may require a home buyer to purchase a lender's policy in connection with a mortgage. (*Id.*). When a homeowner refinances his or her home, the lender may also require the homeowner to purchase a "refinance" lender's policy. (*Id.* at ¶ 15). Although the homeowner pays the policy premium, a lender's policy (whether or not it is a refinance policy) is exclusively for the benefit of the lender. (*Id.* at ¶¶ 14-16).

In New York, pursuant to Article 23 of the Insurance Law, title insurance rates must be filed with, and approved by, the Superintendent of Insurance. N.Y. Ins. Law § 2305(b); *see also Id.* at § 6409. Pursuant to Section 2306 of New York's Insurance Law, Lawyers Title and other title insurance companies delegated their rate filing obligations to the Title Insurance Rate Service Association, Inc. ("TIRSA"). (Am. Compl. ¶ 18). TIRSA files a Rate Manual with the New York Superintendent of Insurance, setting forth the applicable premiums to be charged for, *inter alia*, lender's title insurance policies (the "Rate Manual"). (*Id.* at ¶¶ 19-20).

The Rate Manual provides that, in the case of refinance lender's policies, a discount from the standard premium rate should be applied under certain circumstances. (*Id.* at ¶ 20). The Rate Manual is publicly available and may be obtained online at <http://www.tirsa.org/manual.htm>. *See also* N.Y. Ins. Law § 2305(b) ("[A]fter a rate filing becomes effective, the filing and supporting information shall be open to public inspection.").

According to the Amended Complaint, the Plaintiffs obtained a mortgage loan on their home in November of 2003, and they purchased a lender's title insurance policy in connection with that mortgage. (Am. Compl. ¶ 6). The Amended Complaint further alleges that the Plaintiffs refinanced the prior mortgage loan by obtaining a new mortgage loan on or about November 14, 2006 (the "Refinance Transaction"). (*Id.* at ¶ 7). In connection with this new loan, Lawyers Title issued a lender's title insurance policy with a premium of $653. (*Id.* at ¶ 8). According to the Amended Complaint, the Plaintiffs were entitled to, and did not receive, a 50% refinance discount on the premium paid for the 2006 lender's policy. (*Id.* at ¶¶ 9-12).

The Amended Complaint alleges that copies of lender title policies and the related title commitments are provided to the lender but are "typically" not given to the borrower. (*Id.* at ¶ 17). Although Plaintiffs allege they did not receive a copy of the title insurance policy issued to their lender (*id.* at ¶ 34), they do not allege whether they received a copy of the related title commitment. In any event, Plaintiffs admit that "[a]t closing, Plaintiffs received a closing statement that itemized the costs associated with the closing, including the premium amount charged by Defendant." (*Id.* at ¶ 30).

Based on these allegations, the Amended Complaint asserts claims on behalf of the Plaintiffs and a putative class for (1) money had and received; (2) unjust enrichment; and (3) violation of New York GBL § 349. (*Id.* at ¶¶ 51-80).

## ARGUMENT

### I.    Standard on a Motion to Dismiss

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), the Supreme Court emphasized that, in order to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is *plausible on its face*" and makes clear that "[f]actual

allegations must be enough to raise a right to relief *above the speculative level.*" *Id.* at 570, 555;[3] *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)); *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 120-21 (2d Cir. 2007) (noting that *Twombly* requires that a complaint "must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which *actively and plausibly* suggest that conclusion").

In other words, Plaintiffs' allegations must "possess enough heft to sho[w] that the pleader is entitled to relief." *Twombly*, 550 U.S. at 1966 (alteration in original) (internal quotation marks omitted). "[S]omething beyond the mere possibility" of a claim must be alleged "lest a plaintiff with a largely groundless claim be allowed to take up [the] time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 557-58 (internal quotation marks omitted).

> As this Court recently explained in a related case involving similar claims:
>
> Courts therefore use a two-pronged approach to examine the sufficiency of a complaint . . . . This examination is context[-]specific and requires that the court draw on its judicial experience and common sense. *Iqbal*, 129 S. Ct. at 1950. First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. *See Iqbal*, 129 S. Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." *Id.* "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. *Id.*

*Lang v. First Am. Title Ins. Co. of N.Y.*, 816 F. Supp. 2d 214, 216 (W.D.N.Y. 2011).

---

[3] Unless otherwise indicated, all emphasis in quoted material has been added.

The Amended Complaint here fails to satisfy the *Twombly* standard with regard to any substantive count asserted and, as such, the Amended Complaint should be dismissed.

## II.     Plaintiffs Failed to Exhaust Administrative Remedies As Required by New York Law.

The New York Legislature created an administrative remedy for aggrieved consumers – like the Plaintiffs here – to resolve their disputes.  Section 2319(b) of the New York Insurance Law provides that "every insurer . . . shall provide within this state reasonable means whereby any person aggrieved by the *application* of its rating system may be heard . . . on written request to review the manner in which such rating system has been applied in connection with the insurance afforded or offered."  Section 2319(b) further provides that "[a]ny party affected by the action of the insurer . . . on the request may . . . appeal to the superintendent, who, after a hearing held . . ., may affirm, modify or reverse such action."[4]

Here, Plaintiffs challenge Lawyers Title's application of the Rate Manual to their Refinance Transaction.  As Plaintiffs allege in the Amended Complaint, the Rate Manual is governed by Article 23 of the Insurance Law of New York (Am. Compl. ¶ 18), which includes the administrative exhaustion requirement set forth in Section 2319(b).  Accordingly, because all of Plaintiffs' claims are dependent on Article 23, Plaintiffs are required to exhaust administrative remedies pursuant to Section 2319(b).  *See Investors Ins. Co. of Am. v. Karbel Wholesale Autos, Inc.*, 148 Misc. 2d 933, 934, 569 N.Y.S.2d 323, 323-324 (N.Y. App. Term. 1990) (concluding that any claim that the plaintiffs were charged an improper premium rate be "disposed of by

---

[4]  Similarly, New York Insurance Law § 2321(c)-(d) provides that a claim alleging "unfair discrimination exists in the making or in the application of rates made or used by any rate service organization or by any authorized insurer" may be brought "upon the initiative of the superintendent [of insurance] or upon written application to the superintendent by any aggrieved person . . . ."  To the extent Plaintiffs' claims are premised on any allegation that Lawyers Title's application of its filed rates was discriminatory in any respect, then those claims should be dismissed for failure to exhaust the administrative remedies afforded by § 2321.

means of an appeal to the administrative rating board and then to the Superintendent of Insurance") (citing cases); *see also* 69 N.Y. Jur. 2d Insurance § 1109 ("The claim of an insured that is being charged at an improper premium rate will not be entertained by a court where the insured has not exhausted his or her administrative remedies by presenting the claim to an administrative rating board and then to the Superintendent of Insurance," citing *Karbel*); *accord* 71 N.Y. Jur. 2d Insurance § 2322.

The same rationale was applied by the federal Fourth Circuit Court of Appeals in *Arthur v. Ticor Title Insurance Co. of Florida*, 569 F.3d 154, 161-62 (4th Cir. 2009). There, just like in this case, the plaintiffs filed a putative class action asserting that they were entitled to, but failed to receive, the title company's discounted refinance filed rate. *Id.* at 156. The district court dismissed the claim for money had and received because the plaintiffs failed to exhaust administrative remedies available under the Maryland Insurance Code ("MIC"). *Id.* at 161.

On appeal, the Fourth Circuit affirmed the dismissal because the MIC contained administrative remedies and, although the plaintiffs labeled their claim as one for money had and received, the claim was "dependent on the Insurance Code because that claim will succeed only if plaintiffs show that [the insurer] violated the Code. . . . Indeed, plaintiffs [] suggested no reason other than a violation of the Insurance Code that [the insurer] would be liable to them under a claims for money had and received." *Id.* Additionally, the court concluded that the plaintiffs could access the same remedies before the Insurance Commissioner that they sought in federal court, and resolution of the claim necessarily implicated the expertise of the Insurance Commissioner. *Id.* at 161-62. Accordingly, the court affirmed the dismissal for failure to exhaust administrative remedies. *Id.* at 162; *see also Woods v. Stewart Title Guar. Co.*, No. CCB-06-705, 2010 WL 786294, *1-2 (D. Md. Mar. 3, 2010) (denying leave to amend complaint

because the proposed claims depend on the MIC in the same manner as the claims in *Arthur*); *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 442 F. App'x 2, 3-5 (4th Cir. 2011) (under similar facts, affirming grant of insurer's motion for judgment on the pleadings pursuant to *Arthur*, where each of the claims relied on a threshold determination that the insurer violated the MIC, and the plaintiffs had not exhausted administrative remedies).

Similarly here, Article 23 provides administrative remedies for consumers aggrieved by the application of the rating system, and Plaintiffs provide no other reason than a violation of the Rate Manual's provisions that Lawyers Title would be liable to them for money had and received, unjust enrichment, and implied contract. *See Arthur*, 569 F.3d at 161 ("[P]laintiffs have suggested no reason other than a violation of the Insurance Code that [the insurer] would be liable to them under a claims for money had and received."); *Carter v. Huntington Title & Escrow, LLC*, 24 A.3d 722, 736-38, 420 Md. 605, 630-33 (Md. July 14, 2011) (concluding that money had and received/statutory violation claim was a statutory claim, not a contractual claim, citing *Arthur*). Therefore, just as in *Arthur*, all of Plaintiffs' claims are statutory claims that are wholly dependent on Article 23. Furthermore, Plaintiffs' common law claims are equivalent to an action to recover a monetary penalty under Article 23, so Plaintiffs' claims implicate the authority of the Superintendent of Insurance to require payment of monetary penalties for violation of Article 23. *See* New York Insurance Law § 2320(3)(c) (McKinney's 2011). Thus, just as in *Arthur*, it "makes sense for the [Superintendent] to exercise his expertise in the first instance in determining whether full restitution to plaintiffs is warranted." 569 F.3d at 162.

Here, Plaintiffs fail to allege – because they cannot – that they have initiated and exhausted the administrative remedies that they are required to exhaust under Section 2319(b) before they brought this action. Accordingly, Plaintiffs' state law claims should be dismissed

based on Plaintiffs' failure to comply with the administrative exhaustion requirement in § 2319(b). *See Karbel*, 148 Misc. 2d at 934; *Arthur*, 569 F.3d at 161-62; *Mitchell-Tracey v*, 442 F. App'x at 3-5.

### III. The Claim Under GBL § 349 Must Be Dismissed Because Plaintiffs Are Conclusively Presumed to Have Knowledge of Publicly Filed Rates.

Plaintiffs allege that Lawyers Title violated New York's consumer protection statute, GBL §349, because it allegedly "failed to disclose . . . that, because [plaintiffs] refinanced their mortgages or fee interests on the identical premises within ten (10) years from the date of closing of their previously insured mortgage or fee interest, they were entitled, or, at least, potentially entitled, to pay a reduced premium." (Am. Compl. ¶ 69). Because the Plaintiffs were in at least as good a position as Lawyers Title to know whether they qualified for a reduced rate, and because the Plaintiffs are conclusively presumed to have knowledge of the publicly filed rates in question, their § 349 claim fails as a matter of law.

To state a claim for deceptive acts or practices under § 349, a plaintiff must plead three elements: (1) that the challenged act or practice was consumer-oriented; (2) that it was misleading in a material way; and (3) that the plaintiff suffered actual injury as a result of the deceptive act or practice. *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005). Where, as here, the alleged deceptive act is a failure to disclose information, a valid claim under § 349 will arise only if the defendant had a duty to disclose the information in question. *Super Glue Corp. v. Avis Rent a Car Sys., Inc.*, 159 A.D.2d 68, 71, 557 N.Y.S.2d 959, 961 (2d Dept. 1990). As the New York Court of Appeals has held, such a duty may arise "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26-27, 623 N.Y.S.2d 529, 533 (N.Y. 1995).

In contrast, where the plaintiff possesses or reasonably could have obtained the relevant information, there is no duty to disclose, and hence no violation of the statute. *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003) (dismissing § 349 claim based on fast food chain's failure to disclose nutritional information, since "plaintiffs fail to allege that the information with regard to the nutritional content of McDonalds' products was solely within McDonalds' possession or that a consumer could not reasonably obtain such information"). As the Court of Appeals has explained, if the consumer has or can reasonably obtain the information in question, § 349 "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation." *Oswego Laborers' Local*, 85 N.Y.2d at 26, 623 N.Y.S.2d at 533.

Applying this principle, New York courts do not hesitate to dismiss claims under § 349 premised on alleged failure to disclose information where the plaintiff fails to plead and/or prove that only the defendant possessed the information in question. For example, in *Super Glue Corp.*, the court affirmed the grant of summary judgment dismissing a § 349 class action claim in which the plaintiffs alleged that the defendant, a car rental company, had charged customers for collision damage waiver insurance but allegedly failed to disclose to the customers that they might already have such coverage. 159 A.D.2d at 71, 557 N.Y.S.2d at 961. The court held that "the customer with CDW coverage in place was in a far better position to ascertain the relevant conditions and exclusions relating to his or her coverage than was Avis . . . . Accordingly, we find that Avis had no legal duty to disclose information pertaining to the CDW coverage supplied by other companies." *Id.*; *see also Gershon v. Hertz Corp.*, 215 A.D.2d 202, 202-203, 626 N.Y.S.2d 80, 81 (1st Dept. 1995) (affirming dismissal of class action under § 349 based on alleged failure to disclose where the information in question "had to be evident to plaintiff");

10

*Pelman*, 237 F. Supp. 2d at 529 (where plaintiff failed to allege that the information in question was solely in defendant's possession and could not be reasonably obtained by a consumer, "[i]t cannot be assumed that [the information] was solely within the possession of [the defendant]").

Here, the Plaintiffs themselves clearly were in at least as good a position as Lawyers Title to know whether they had a previous insured mortgage or fee interest on the same property (*see* Am. Compl. ¶ 6), and they also knew the amount of the premium they were charged for the Lawyers Title lender's policy (*Id.* at ¶ 30). In addition, because – as the Amended Complaint itself acknowledges (Am. Compl. ¶¶ 18-20) – the regular and reduced refinance rates and the standards for applying the refinance rate were filed with the state Superintendent of Insurance by TIRSA and are publicly available, the Plaintiffs are "conclusively presumed" to have knowledge of the applicable rates. *Porr v. NYNEX Corp.*, 230 A.D.2d 564, 575-77, 660 N.Y.S.2d 440, 447-48 (2d Dept. 1997) (internal quotation marks omitted); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998) (holding § 349 claim properly dismissed "because consumers are conclusively presumed to know the legal tariffs filed with [the administrative agency]"); *Fax Telecommunicaciones Inc. v. AT&T*, 138 F.3d 479, 490 (2d Cir. 1998) (plaintiff's "knowledge of the filed rate is conclusively presumed"); *Doyle v. AT&T Corp.*, 304 A.D.2d 521, 522, 760 N.Y.S.2d 503, 504 (2d Dept. 2003) ("[T]he plaintiff is presumed to have had knowledge of" filed rates.).

Moreover, in addition to setting forth the criteria to qualify for the discounted refinance rate, the publicly available TIRSA Rate Manual also contains a table allowing the title insurance premium for any mortgage to be precisely calculated. TIRSA, Title Insurance Rate Manual New York State, at 22 (Fourth Reprint dated May 1, 2007) (available at http://www.tirsa.org/manual.htm). Using this table, anyone who – like the Plaintiffs – knows the

11

amount of the mortgage in question can calculate what the title insurance premium should be. Accordingly, since the Plaintiffs are deemed to be aware of the regular and refinance rates, and since they clearly had all of the necessary information to know whether they qualified for those rates, Lawyers Title had no duty to disclose that the Plaintiffs might be entitled to the lower rate, and the § 349 claim must be dismissed.

### IV. The Voluntary Payment Doctrine Bars Plaintiffs' State Law Claims.

Finally, each of Plaintiffs' state law claims must be dismissed under the voluntary payment doctrine, which "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526, 760 N.Y.S.2d 726, 727 (N.Y. 2003) (internal citation omitted). Here, Plaintiffs are deemed to have full knowledge of the relevant facts for the reasons set forth above, and the Amended Complaint is devoid of any allegations of fraud or material mistake. Accordingly, the state law claims fail.

Courts in New York have repeatedly applied the voluntary payment doctrine to dismiss class actions where, like here, the plaintiffs knowingly paid the amounts in question without questioning or challenging them, and then later brought suit claiming to have been overcharged. For example, in *Westfall v. Chase Lincoln First Bank, N.A.,* 258 A.D.2d 299, 300, 685 N.Y.S.2d 181, 182 (1st Dept. 1999) the court applied the voluntary payment doctrine and affirmed the grant of summary judgment dismissing a putative class action in which plaintiffs alleged that defendant mortgage lender had charged a fee for recording the discharge of mortgages that exceeded the lender's actual costs, in violation of the terms of the relevant mortgages. In upholding the dismissal of the claims for breach of contract, violation of GBL § 349, unjust enrichment, and conversion, the court held that:

> [P]laintiffs paid the subject charges without protest or even inquiry, and were not laboring under any material mistake of fact when they did so. Plaintiffs admit that they never actually gave any thought to the recording fee, or to defendants' basis for charging it, prior to paying off their mortgage, and they therefore cannot claim to have been misled by any implicit representation that the actual cost of recording the discharge was the same as the amount of the recording fee charged by defendants. . . .

*Id.* at 182 (internal citations omitted).

Similarly, in *Morales v. Copy Rights, Inc.*, 28 A.D.3d 440, 441, 813 N.Y.S.2d 731, 733 (2d Dept. 2006), the court affirmed the pre-answer dismissal of a putative class action alleging that defendant had charged more than the statutory maximum amount for copying subpoenaed medical records, holding that "plaintiffs' voluntary payment of the photocopying charges, without any alleged fraud or mistake of material fact or law, bars recovery of the payments under the 'voluntary payment doctrine.'" *See also MacDonnell v. PHH Mortgage Corp.*, 45 A.D.3d 537, 538-39, 846 N.Y.S.2d 233, 224-225 (2d Dept. 2007) (applying voluntary payment doctrine and affirming dismissal of claims for unjust enrichment, money had and received, and conversion in class action alleging that mortgage lender had charged unspecified "unpaid other fees" that were in fact improper charges for faxing payoff statements to plaintiffs);[5] *Dillon*, 100 N.Y.2d at 525, 760 N.Y.S.2d at 727 (affirming dismissal of class action against cable company in which plaintiffs claimed that defendant had misrepresented that $5 late-payment fee was an administrative fee based on actual cost, rather than a penalty, since plaintiff knowingly paid the

---

[5] It should be noted that the *MacDonnell* court held that the voluntary payment doctrine applied to bar plaintiff's common law causes of action but not his claim under GBL § 349. *MacDonnell*, 45 A.D.3d at 539, 846 N.Y.S.2d at 224-225. However, this holding is inconsistent with the decision of the Court of Appeals in *Dillon*, 100 N.Y.2d at 525, 760 N.Y.S.2d at 727, which applied the voluntary payment doctrine to affirm the dismissal of a class action that included a § 349 claim. *See also Westfall*, 258 A.D.2d at 300, 685 N.Y.S.2d at 182 (dismissing, *inter alia*, GBL § 349 claim under the voluntary payment doctrine). As the concurrence in *MacDonnell* indicated, the cases relied on by the majority in declining to dismiss the § 349 claim "are *sui generis* to cases alleging a violation of Real Property Law § 274-a." *MacDonnell*, 45 A.D.3d at 539, 846 N.Y.S.2d at 225 (Goldstein, J, concurring). Of course, that provision of the Real Property Law is not at issue here.

fee and "alleged mischaracterization of a $5 late fee as an administrative fee does not overcome application of the voluntary payment doctrine").

Here, the Plaintiffs knew exactly how much they were being charged for title insurance (*see* Am. Compl. ¶ 30) and, for the reasons set forth above, they are charged with presumptive knowledge of the filed rates and the fact that, under certain circumstances, a discounted rate might be available. Nonetheless, they paid the amount charged without question or protest, and do not allege that they made any effort to ascertain, either before or after payment, whether they might be entitled to a discount. Plaintiffs' allegation that they "had no reason to question the premium charge" (*Id.* at ¶ 67) is of no moment because, as in *Westfall*, Plaintiffs apparently "never actually gave any thought to the [title insurance amount], or to defendants' basis for charging it . . . and they therefore cannot claim to have been misled by any implicit representation" about the basis for the charge. 258 A.D.2d at 300, 685 N.Y.S.2d at 182. They do not allege fraud, nor do they allege any mistake of material fact or law. *Dillon*, 100 N.Y.2d at 525, 760 N.Y.S.2d at 727; *see also Lavin v. Town of E. Greenbush*, 17 Misc. 3d 766, 775, 843 N.Y.S.2d 484, 491 (Sup. Ct., Renns. Co., 2007) (dismissing counterclaim by town seeking reimbursement of wages paid to police chief allegedly in excess of statutorily provided amounts, since paying wages in excess of statutory requirements without realizing that it was doing so "does not constitute a mistake of fact" for purposes of the voluntary payment doctrine). Accordingly, the Plaintiffs' state law claims are barred by the voluntary payment doctrine.

## **CONCLUSION**

Based on the foregoing, the Amended Complaint should be dismissed in its entirety for failure to state a claim against FNTIC.

Respectfully submitted:

/s/ Brian P. Crosby
Brian P. Crosby, Esq.
Gibson, McAskill & Crosby, LLP
69 Delaware Avenue, Suite 900
Buffalo, New York 14202
Telephone:  (716) 856-4200
Facsimile:  (716) 856-4013


/s/  Mark A. Brown
Mark A. Brown
Florida Bar No. 316210
Marty J. Solomon
Florida Bar No. 0523151
Mac R. McCoy
Florida Bar No. 0513407
CARLTON FIELDS, P.A.
Corporate Center III at International Plaza
4221 West Boy Scout Boulevard (33607)
P.O. Box 3239
Tampa, Florida 33601-3239
Telephone:  (813) 223-7000
Facsimile:   (813) 229-4133

*Attorneys for Defendant Fidelity National Title Insurance Corporation*