THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HOWARD N. PARTELL, JR. and BONNIE PARTELL, individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No.  1:12-CV-00376 |
| LAWYERS  TITLE INSURANCE CORPORATION, | § § § | Removed From Supreme Court of the State of New York, County of Erie |
| Defendant. | § | Index No. I2012001088 |

MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION TO
DISMISS FILED MAY 30, 2012

Plaintiffs Howard Partell, Jr. and Bonnie Partell ("Plaintiffs")**,** individually and on behalf of all others similarly situated, by their attorneys, respectfully submit this Memorandum of Law in Opposition to Defendant Fidelity National Title Insurance Company as successors to Lawyers Title Insurance Corporation's ("Defendant" or "LTIC") Motion to Dismiss the Complaint.

**I.**
**PRELIMINARY STATEMENT**

This putative class action seeks redress for Defendant's predatory conduct directed toward New York residential mortgage borrowers.  Contrary to Defendant's argument, the Complaint sufficiently alleges claims within this Court's jurisdiction for violation of  New York General Business Law § 349 and the common law.

1

Defendant's effort to defeat Plaintiffs' claim under New York's unfair and deceptive trade practices act, N.Y. Gen. Bus. Law § 349, fails. Applying the "objectively reasonable" test to assess whether conduct is "materially misleading," Defendant's practices—which violated New York Law—were materially misleading. Plaintiffs' claims are not based solely on "nondisclosure," but rather Defendant's practices and failure to give a mandatory rate reduction. Likewise, Defendant advocates a misreading of New York's administrative procedures concerning insurance laws. There is no mandatory administrative process. The "procedures" cited by Defendant are permissive and concern problems with rate making and rate application, not the claims here. There are no issues here that require the expertise of the insurance commissioner. Moreover, there is no "procedure" in place to handle Plaintiffs' class action and other claims. Finally, the "voluntary payment doctrine" is irrelevant and inapplicable to Plaintiffs' claims. A consumer cannot "voluntarily" pay more than a mandatory rate, thereby affirming or ratifying it. To permit this defense would undermine the mandatory, filed rate structure, permitting insurers to charged unsuspecting consumers any price they choose. In sum, Defendant's arguments are without merit, and Defendant's motion to dismiss should be denied in its entirety.

## II.
## FACTUAL BACKGROUND

### A.    Prior Litigation.

In 2002, New York homeowners sued Defendant and other title insurers in New York alleging claims similar to those asserted here.[1] The Plaintiffs in that case, like here, alleged that Defendant and others failed to give the mandatory refinance discount at issue here and asserted

---

[1] *See In re: Coordinated Title Ins. Cases,* 2 Misc. 1007(A), 784  N.Y.S.2d 919, 2004 WL 6903080 (N.Y. Supp. 2004), attached as Ex. __.

claims for fraud, violation of General Business Law § 349, and unjust enrichment.[2] In that case, the court granted a contested motion for class certification.[3] In support of its findings, the court found that a "failure to notify consumers of the availability of the reduced premium can be viewed as a material omission."[4] The court pointed out that it was hard to imagine "a scenario where a consumer would agree to pay more for a product that the law allows."[5] The court further discussed the GBL § 349 claim, noting that the allegations supporting it consisted primarily of omissions on the part of the defendants that would be "likely to mislead a reasonable consumer acting reasonably under the circumstances."[6]

Defendant argued in that case that perhaps putative class members knew of the discounted rate, yet, for whatever reasons, did not request it.[7] The court, applying common sense, rejected this argument stating:

> The court finds that this line of reasoning too speculative to bar class certification at this stage and, infact, borders on the humorous. No evidence is in the record to indicate a situation where a consumer actually knew they were entitled to the discount and knowingly waived the discount in favor of paying a higher premium.[8]

The court further noted that the knowledge of the plaintiffs or their agents is irrelevant given the mandatory nature of the discounted rate.[9] The court stated that "[i]t appears that there is not much room to argue that the TIRSA guidelines and New York insurance law are not broken

---

[2] *Id* at 2004 WL *5-9.
[3] *Id* at *18-19.
[4] *Id* at *6.
[5] *Id* at *6.
[6] *Id* at *6-7(quoting *Oswego Laborers' Local 214 Pension Fund v. Maine Midland Bank, N.A.*, 85 N.Y. 2d 20, 26 [1995].).
[7] *Id* at *8.
[8] *Id* at *8.
[9] *Id* at *8-9.

when rates that *shall* be charged are not.[10] The court further considered various alleged defenses based on the purported knowledge of the consumers stating:

> Not only does the existence of pled affirmative defenses not bar class certification, but several of the proposed defenses fail a critical logic test and do not go to the heart of the allegations. In logical terms, it is not plausible to think that a consumer, made aware of the opportunity to save hundreds of dollars, would choose to pay the higher rate and forego a savings mandated by law. (*See, e.g., Friar v. Vanguard Holding Corp., supra*)("it is almost impossible to envisage circumstances in which a seller would willing confer a financial gratuity upon the buyer's lender."). Plaintiffs allege that defendants' failure to provide the reduced premium rate at the closing and their failure to notify homeowners of the availability of the discounted rates misled them, and other reasonable homeowners acting reasonably under the circumstances, into paying the full rate. Whether defendants' failure to ensure they charged the correct rate or their simple acceptance of the full premium rate constituted any of the three alleged violations is the predominating question of law and fact.[11]

## B.    <u>Plaintiff's Claims.</u>

The Complaint describes in succinct detail that Plaintiffs refinanced their home and purchased for the benefit of the lender, a new lender title insurance policy.[12]   In the refinancing, their existing loan was paid off by the new loan.[13]   The prior loan was insured by a lender title policy.[14]  Because the reissue lender title policy was issued less than ten years after the date of the prior loan and the loan policy was issued in the amount of $475,000 or less, Defendant was required to discount the premium.[15]

A borrower at a loan closing in New York is typically given a substantial number of documents to sign in a relatively short period of time.  The only document the borrower sees that makes any reference to the title insurance policy that is being issued to the lender is the HUD-1

---

[10] *Id* at *8. (emphasis in original).
[11] *Id* at *9.
[12] *See* Plaintiffs' Amended Complaint (hereinafter "*Complaint*") at 2, ¶ 6.
[13] *See id* at ¶ 10.
[14] *See Id* at 2, ¶ 6.
[15] *See Id*  at 3, ¶ 11; *id*. at 5-6, ¶ 19-20 (quoting TIRSA Rate Manual, "Refinance and Subordinate Mortgage").

Settlement Statement.[16]   The only information on the HUD-1 Settlement Statement concerning the lender title policy is the name of the issuing agent and the dollar amount of the premium, here $653.00.  A borrower is not provided a copy of the lender title insurance policy issued either when he purchases the property or when he refinances the property.[17]   Rather, this lender title insurance policy is delivered directly to the lender and not copied to the borrower.[18]

Plaintiffs were charged $653.00 for lender title insurance when they refinanced their home.   It appears that the discount applicable to Plaintiffs' refinancing was $277.00.[19] However, because Defendant has not provided a copy of the policy or its rates, this calculation is subject to revision.   Because the discount is mandatory under applicable New York law, Defendant and its agent could not as a matter of law have provided any services for the discount. In other words, Defendant was required to issue for $277.00 less the exact same policy that it issued for $653.00.  Plaintiff is entitled to rely on Defendant and its agent to apply the proper rate.

## C.     Defendant's Misleading HUD-1.

Title agents and other settlement-service providers are required to comply with applicable federal regulations governing mortgage lending transactions, including guidelines promulgated by the Department of Housing and Urban Development ("HUD").   Settlement agents are required to use form HUD-1 or HUD-1A settlement statements and to complete them in accordance with certain instructions.[20] The settlement agent is required to itemize all charges imposed on the borrower.[21]    "For all items except those paid to and retained by the lender, the

---

[16] *See generally,* Complaint at 7-8, ¶ 23-24.
[17] *See Id* at 8, ¶ 34.
[18] *See Id* at 8, ¶ 34.
[19] *See* Complaint at 3, ¶ 13.
[20] *See* 24 C.F.R. § 3500.8.
[21] *See* 24 C.F.R. § 3500.8 app. A. ("General Instructions").

name of the person or firm *ultimately* receiving the payment should be shown."[22]    The title

agent is required to show the individual charges for lender's title insurance.[23]    Sample HUD-1s,

attached, demonstrate what information must be disclosed, including endorsements and pricing.[24]

The samples do not sufficiently disclose premium splitting or identity of recipients.  The title

agent closing Plaintiff's transaction did not follow these regulations and concealed the identity of

Defendant and the components of the title insurance premium. The proper charge was also

affirmatively misrepresented.

**D.    The Components of the Title Insurance Charge Were Not Disclosed or Available to Plaintiffs.**

As noted above and below, the only pertinent document Plaintiffs were given to review at

closing was the HUD-1 disclosure statement, which simply stated:

Title Insurance to Land America OneStop 653.00

Lender's coverage $115,000.00 premium: 653.00.[25]

Significantly, the HUD-1 does not reasonably raise a suspicion concerning the title

insurance charge.  The HUD-1 does not state how the premium was calculated or the accurate

premium amount.  The statement does not disclose the actual title insurer, the endorsements or

the cost of the endorsements applied or the rate applied.  The HUD-1 misrepresents that the

correct charge is $653.00.

Title-insurance rates are not transparent or simple, as a senior corporate officer, speaking

for Defendant, acknowledged to New York's Insurance Commissioner.[26]    Consistent with that

acknowledgement, Plaintiffs did not have benefit of the computer programs routinely used in the

---

[22] 24 C.F.R. § 3500.8 app. A. § L ("Settlement Charges").
[23] *See* 24 C.F.R. § 3500.8 app. A.
[24] *See* Exh. "1."
[25] *See* Partell's HUD-1, Exh. "2."
[26] *See* Transcript 41-42, New York Insurance Public Hearing on Title Insurance, Nov. 3, 2006, Statement of Bruce Wright, Exh. "3."

industry to calculate title-insurance premiums.    They did not possess the transactional information necessary to determine the correct premium or know where such information is located.    Plaintiffs lacked working knowledge of the voluminous Rate Manual rules and procedures.    Plaintiffs' lack of access to the policy resulted in the inability to determine which endorsements -- or their various prices – were added to the policy.    At least 14 endorsements potentially are applicable to lender's policies at varying prices and that possibly total $430.00.    Optional endorsements and their prices include: (1) Access, $25:00; (2) Balloon, $25.00; (3) Environmental, $25.00; (4) Reverse Mortgage, $25.00; (5) Variable – Fixed, $25.00; (6) Waiver – Loan, $25.00; (7) ATLA 9, $65.00; (8) Cluster, $25.00; (9) Contiguity, $25.00; (10) Land Same as Survey, $25.00; (11) Planned Unit Development, $25.00; (12) Residential Mortgage, $25.00; (13) Rev. Credit – Residential, $65.00; and (14) Variable – Neg. Amort., $25.00.

Additionally, the website of the New York State Insurance Department, relied upon by Defendant, does not reflect or give notice of the rate reduction approved in mid-2006 and which appears to apply, but may not have been applied in fact, to Plaintiffs' purchase.[27]    It appears that Defendant and its agent applied the wrong base rate, without the benefit of the 2006 rate reduction, to Plaintiffs' transaction.

**E.    The 255 Page Rate Manual Does Not Give Notice of Defendant's Unlawful Charge or Practices.**

Defendant relies heavily on the online availability of  the Rate Manual at http://tirsa.org/May2007RateManualIndexedFINAL.PDF." Defendant does not disclose that the Rate Manual, once located and obtained, is 255 pages long.

Notably, the applicable base rates were not readily available.  In June 2006, the New York State Insurance Department approved 15% rate reductions, effective immediately.[28]

---

[27] *See* Announcement, June 29, 2006, New York State Insurance Department, Exh. "4."
[28] *See* Announcement, June 29, 2006, New York State Insurance Department, Ex. "4."

However, those new rates apparently are not published on the Department's website. It does not appear that Plaintiffs were given this mandatory rate reduction. Accordingly, Plaintiffs estimated calculation in the Complaint of the unearned fee likely is understated. Thus, it is presently unclear from the information available to Plaintiffs what the correct charge should have been.

Further weakening Defendant's assertions based on cyberspace posting are statements made on its behalf in a public hearing of the New York State Insurance Department. Less than two weeks before Plaintiffs refinanced their home and purchased the lender policy here, a spokesperson for Lawyers Title stated:

> Finally, I will emphasize that LandAmerica supports *efforts to clarify and simplify rate and fee structures.* In a number of states across the United States regulators are *seeking transparency and simplification of title insurance rates and fees.* We are strongly supportive of *these goals* and are *willing to work* with TIRSA and the New York Insurance Department toward these goals in New York.[29]

Defendant's public statements belie its litigation assertion that simple online posting of the 255-page Basic Manual provided a reasonable person notice of the overcharge and deceptive practices here.

---

[29] *See* Transcript 41-42, New York Insurance Public Hearing on Title Insurance, Nov. 3, 2006, Statement of Bruce Wright, Exh. "3."

# III.
# ARGUMENTS AND AUTHORITIES

## A.      Standards Governing a Motion to Dismiss.

In determining whether a complaint states a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court construes the Complaint liberally, accepts all factual allegations as true and draws all reasonable inferences in plaintiffs' favor.[30]   Indeed, the Complaint need not include detailed factual allegations in order to show the grounds of entitlement to relief.[31]   The "[f]actual allegations must be enough to raise a right to relief above the speculative level."[32]   A complaint need only state "plausible" grounds.[33]

## B.      Exhaustion of Administrative Remedies is Inapplicable.

Citing to a single, wholly inapposite Appellate Term case and federal decisions applying Maryland law, Defendant attempts to argue that Plaintiffs were required to follow certain administrative procedures under section 2319(b) of New York's Insurance Law before instituting this suit.  That New York case, *Investors Ins. Co. of Am. v. Karbel Wholesale Autos, Inc.*,[34] is easily distinguished.   The plaintiff there was an insurer seeking unpaid premiums from its insured.   The insured attempted to defend on the ground that the plaintiff had misclassified its business as including auto repairs and auto sales, when, in fact, defendant only sold automobiles (which would have resulted in a lower premium).[35]   On those facts, the appellate term merely held that "the defense of improper classification [was] not within the jurisdiction of the court

---

[30] *See ATSI Commc'n, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007); *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir. 2008). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).
[31] *Bell Atl. Corp.,* 127 S. Ct. at 1964-65.
[32] *Id*; *Goldstein,* 516 F.3d at 56.
[33] *Bell Atl. Corp.,* 127 S. Ct. at 1965.
[34] *Investors Ins. Co. of Am. v. Karbel Wholesale Autos, Inc.*, 148 Misc. 2d 933, 569 N.Y.S.2d 323 (N.Y. App. Term. 1990)
[35] *Id.* at 323, 934.

9

below . . . ."[36]    Nowhere does the decision require administrative exhaustion prior to bringing claims against an insurer for deceptive trade practices or unjust enrichment.  This is not a case of improper classification.

The administrative exhaustion doctrine is inapplicable when the administrative remedies do not include the remedy sought by the claimant.[37] Here, Plaintiff requests class treatment pursuant to Rule 23, along with other relief, such as attorneys' fees. There is no provision in Section 2319(b) for class treatment of claims. Accordingly exhaustion does not apply.

Indeed, New York simply does not impose an administrative exhaustion requirement for the claims here.  First, nothing in the plain language of section 2319(b) requires exhaustion in a case such as this one.  Section 2319(b) states, in part, that "every insurer or rate service organization shall provide within this state reasonable means whereby *any person aggrieved by the application of its rating system may* be heard. . . ." (Emphasis added).  Thus, it is clear that (i) the administrative relief provided is for those aggrieved by the application of the rating system; and (ii) such persons *may* choose to use the administrative process.  This provision does not foreclose a private action concerning the failure to apply a mandatory rate and complaining of deceptive practices. Similarly, the provision, if applicable, is clearly permissive rather than mandatory. Moreover, there is no question here concerning the interpretation of the rates. The discount is clearly applicable and mandatory.

Second, Defendant's violation of its own filed rates presents an issue that is appropriate for judicial resolution.  In *Good v. American Pioneer Title Insurance Co.*,[38] the Second Department specifically addressed this issue:

> Here, the complaint alleged, in relevant part, that the defendant charged a title insurance premium in excess of the applicable rate published by the Title Insurance Rate Service

---

[36] *Id.*
[37] *White v. Shull,* 520 F. Supp. 11, 13 (S.D.N. 1981).
[38] *Good v. American Pioneer Title Insurance Co.*, 12 A.D. 401, 783 N.Y.S.2d 841 (N.Y.A.D. 2d Dept. 2004)

Association in its Rate Manual.  The proper interpretation of the Rate Manual, and the defendant's alleged violation thereof, presented questions of law cognizable by the court.  *See Kovarsky v. Brooklyn Union Gas Co.*, 279 N.Y. 304, 312, 18 N.E.2d 287.[39]

Here, likewise, the questions are properly before this Court.  The questions here are not so "intimate and technical" as to warrant referral to the agency.[40]

The purposes behind the exhaustion doctrine would not be served by dismissal here.  There are three underlying purposes of the doctrine.[41] First, exhaustion allows an agency to correct any error that it made,[42] a rationale that clearly has no application here. Second, exhaustion allows an agency to resolve the controversy or narrow the dispute.[43] Here, the agency cannot resolve the class claims or afford full relief to plaintiffs. Finally, exhaustion allows development of a more complete record than would result from litigation.[44] Here, none of these rationales supports dismissal and which will delay of the resolution of this dispute.

The Second Circuit has explicitly rejected Defendant's argument that insurance companies may avoid GBL § 349 claims for deceptive practices by hiding behind the mantle of administrative procedure.  Confronted with a similar argument, the Second Circuit held:

> This [no private right of action] argument fails, however, because it ignores the plain language of GBL § 349(g) which states that "[t]his section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state."  By its own terms, therefore, GBL § 349 applies to the acts or practices of every business operating in New York.  Official Practice Commentaries to General Business Law §§ 349-50, *reprinted at* 19 McKinney's § 349, at 90-92 (Supp. 1992) (stating that GBL § 349 "contains no exceptions or exemptions for regulated industries", and suggesting possible usages against insurance companies).  *Nowhere does GBL § 349 provide an exception for insurance companies, nor does the Insurance Law exempt insurance companies from the reach of GBL § 349*.[45]

---

[39] *Id* at 842, 402.
[40] *Id.*
[41] *White,* 520 F.Supp at 13.
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52 (2d Cir. 1992) (emphasis added).

The weakness of Defendant's jurisdictional argument is demonstrated by its reliance on *Arthur v. Ticor Title Insurance Co. of Florida,* construing Maryland – rather than New York – administrative law.[46] *Arthur* expressly relied on a feature of Maryland law that has no counterpart in New York law: "Under Maryland law, when the statutory text creating an administrative remedy is intended to be primary, and that a claimant cannot maintain the alternative judicial action without first invoking and exhausting the administrative remedy."[47] Defendant's failure to inform the Court of the inapplicable Maryland presumption, a cornerstone of *Arthur*, is telling of the unconvincing nature of Defendant's assertions concerning New York law. Similarly, there is no need here for the "expertise" of the Insurance Commissioner, a crucial part of the analysis in *Arthur*.[48] Moreover, *Arthur* and the other Maryland cases were based on the premise that the plaintiffs had the same remedies through the administrative process.[49]

In short, Defendant's "exhaustion" argument is simply without merit, and should be rejected.

C.    **The Complaint States a Claim Under GBL § 349 .**

Defendant attempts to argue that its practice of charging unlawful and unearned insurance premiums is not actionable under GBL § 349, New York's deceptive trade practices statute.  In essence, Defendant argues that Plaintiffs "are conclusively presumed to have knowledge of the publicly filed rates in question,"[50] thus relieving Defendant of its duty to charge Plaintiffs the mandated rate.  Nowhere in its submission does Defendant address the "objectively reasonable" test imposed by the courts to assess whether conduct is "materially misleading" within the meaning of GBL § 349.  Nor does Defendant address the fact that because it violated New York laws, its practices were materially misleading as a matter of law.  Plaintiffs' claim is not based on

---

[46] *See* Defendant's brief at 7 [Doc. 15-3] (citing *Arthur v. Ticor Title Ins. Co. of Fla.,* 569 F.3d 154 (4th Cir. 2009)).
[47] *Arthur,* 569 F. 3d at 161.
[48] *Id* at 161-2.
[49] *Id* at 162.
[50] Defendant's Brief at 11.

nondisclosure of the rates. Rather, in the context of the transaction here, where Defendant had superior knowledge and a duty to apply the correct rate, Defendant's conduct was materially misleading and deceptive. Defendant charged an unlawful rate, knowing all the facts of the transaction. In sum, Defendant's arguments in favor of dismissing the GBL § 349 claim based on Plaintiffs' supposed knowledge of the proper title insurance rates should be rejected.

Before turning to Defendant's arguments, it is critical to note that Defendant has previously lost a nearly identical argument in an analogous case during the class certification phase.[51]  In fact, in *Coordinated Title* — contradicting Defendant's insupportable position that GBL § 349 does not apply here — the New York state court certified a class action that included claims under GBL § 349 against Defendant for "reissue" rate abuses similar to those targeted in this case.[52]  As described above, the court found plaintiffs' allegations of deceptive practices viable and rejected defendants' implausible defenses.

## 1.    Elements of a GBL § 349 Claim.

The Complaint states a claim for violation of GBL § 349.  That statute is "based on broad consumer-protection concerns," and is designed to "curtail deceptive acts or practices — willful or otherwise — directed at the consuming public."[53]  A claim under the statute has three elements: "(1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result."[54] Furthermore, "[t]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be

---

[51] *See In re Coordinated Title Ins. Cases*, 2 Misc. 3d 1007(A), 784, 2004 WL 690380 (N.Y. Sup. Ct. Jan. 8, 2004)).
[52] *See In re Coordinated Title Ins. Cases*, 2004 WL 690380, at *6 ("The question raised in the complaint involves the conduct of the defendants in allegedly overcharging or failing to notify [class members] of the availability of mandated discounts").
[53] *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 333 (App. Div. 1999) (citations omitted); *see also, Karlin v. IVF America*, 93 N.Y.2d 282, 290 (App. Div. 1999) (GBL § 349 applies to "virtually all economic activity" and its "application has been correspondingly broad") (citations omitted).
[54] *Cohen v. J.P. Morgan Chase*, 498 F.3d 111, 126 (2d Cir. 2007) (citations omitted).

'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"[55]

However, the statute "does not require proof of justifiable reliance;" likewise, "[a]lthough it is

not necessary [to state a claim] under the statute . . . proof of scienter permits the court to treble

the damages."[56]   Applying these standards, it is plain that the Complaint adequately alleges a

claim under GBL § 349.

2.      **GBL § 349 Has Broad Applicability and Covers Claims Regarding Insurance Rates.**

New York courts regularly reaffirm the broad scope of GBL § 349. In a recent case

involving title insurance, the Second Department denied a motion to dismiss a GBL § 349 claim

stating:

> [4] General Business Law § 349 prohibits deceptive and misleading
> business practices and its scope is broad indeed (*see Karlin v. IVF Am.*, 93
> N.Y.2d 282, 290, 690 N.Y.S.2d 495, 712 N.E.2d 662, quoting N.Y. Dept. of
> Law, Mem. to Governor, 1963 N.Y. Legis. Ann., at 105 [General Business
> Law § 349 "on [its] face appl[ies] to virtually all economic activity, and
> [its] application has been correspondingly broad. The reach of [this] statute
> [ ] 'provide[s] needed authority to cope with the numerous, ever-changing
> types of false  and deceptive business practices which plague consumers in
> our State' "] [citations and footnote omitted]; *see also Matter of Food
> Parade, Inc. v. Office of Consumer Affairs of County of Nassau,* 7 N.Y.3d
> 568, 574, 825 N.Y.S.2d 667, 859 N.E.2d 473 [Graffeo, J., dissenting]
> ["This Court has broadly construed general consumer protection laws to
> effectuate their remedial purposes, applying the state deceptive practices
> law to a full spectrum of consumer-oriented conduct, from the sale of
> 'vanishing premium' life insurance policies to the provision of infertility
> services ... In determining what types of conduct may be deceptive practices
> under state law, this Court has applied an objective standard which asks
> whether the 'representation or omission [was] likely to mislead a reasonable
> consumer acting reasonably under the circumstances,' taking into account
> not only the impact on the 'average consumer' but also on 'the vast
> multitude which the statutes were enacted to safeguard—including the
> ignorant, the unthinking and the credulous who, in making purchases, do
> not stop to analyze but are governed by appearances and general
> impressions' "] [citations omitted]; *Gaidon v. Guardian Life Ins. Co. of Am.,*
> 96 N.Y.2d 201, 210, 727 N.Y.S.2d 30, 750 N.E.2d 1078 [General Business
> Law § 349 "encompasses a significantly wider range of deceptive business

---

[55] *Cohen*, 498 F.3d at 126 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85
N.Y.2d 20, 26 (App. Div. 1995)).
[56] *Oswego*, 85 N.Y.2d at 26.

practices that were never previously condemned by decisional law"]; _State of New York v. Feldman,_ 210 F.Supp.2d 294, 301 [General Business Law § 349 "was intended to be broadly applicable, extending far beyond the reach of common law fraud"] ).[57]

The _Wilner_ court went on to describe the expansive reach of GBL § 349, including claims involving insurance:

> The types of goods and services to which General Business Law § 349 applies is expansive. With regard to matters pertaining to insurance, it has been determined to apply to:
>
> _Coverage & Rates_ (see _Gaidon v. Guardian Life Ins. Co. of Am.,_ 94 N.Y.2d 330, 704 N.Y.S.2d 177, 725 N.E.2d 598 ["out-of-pocket premium payments [for life insurance policies] would vanish within a stated period of time"]; _Monter v. Massachusetts Mut. Life Ins. Co.,_ 12 A.D.3d 651, 784 N.Y.S.2d 898 [allegations of misrepresentations concerning terms of Flexible Premium Variable Life Insurance Policies, and deception concerning marketing thereof]; _Beller v. William Penn Life Ins. Co. of N.Y.,_ 8 A.D.3d 310, 778 N.Y.S.2d 82 [plaintiff stated General Business Law § 349 cause of action by alleging that the defendant engaged in deceptive practices by increasing the cost of insurance rates without regard to certain flexible factors which would have required the raise to decrease]; _Skibinsky v. State Farm Fire & Cas. Co.,_ 6 A.D.3d 975, 775 N.Y.S.2d 200 [allegations of intentional misrepresentation concerning coverage of a insurance policy provided to plaintiff]; _Brenkus v. Metropolitan Life Ins. Co.,_ 309 A.D.2d 1260, 765 N.Y.S.2d 80 [amount of life insurance coverage]; _Batas v. Prudential Ins. Co. of Am.,_ 281 A.D.2d 260, 724 N.Y.S.2d 3; _Makastchian v. Oxford Health Plans,_ 270 A.D.2d 25, 704 N.Y.S.2d 44 [allegations of deceptive practices that would cause subscribers to believe that they still had health insurance when coverage had already been cancelled] )

## 3.    **Defendant's Practices Were "Materially Misleading."**

The Complaint alleges that Defendant's acts and omissions were directed at consumers such as Plaintiffs and the Class as a whole, and that Plaintiffs and the Class suffered damages as a result.[58]   Nonetheless, Defendant appears to argue that the Complaint somehow fails to satisfy

---

[57] _Wilner v. Allstate Insurance Co.,_ 71 A.D.3d 155, 893 N.Y.S.2d 208, 212-213 (NY Sup. Ct. App. Div. 2d. Dept. 2010).

[58] _See, e.g.,_ Complaint at 14, ¶ 69 ("Defendant failed to disclose to Plaintiffs and members of the Class . . . that . . . they were entitled . . . to pay a reduced premium . . . ."); Complaint at 14, ¶ 7L ("Defendant's unlawful deceptive acts and practices have directly, foreseeably, and proximately caused actual damages and injury to Plaintiffs and other members of the Class.").

the "materially misleading" element of a claim under GBL § 349 because Defendant allegedly lacked a duty to disclose to Plaintiffs that Defendant was required to charge the lower, legally mandated "reissue" premium. Defendant argues this despite the fact that N.Y. Ins. Law § 6409(b) states unequivocally that after filing its rates, no title insurer shall "deviate from th[ose] rates . . . ." Defendant mischaracterizes the claims in an attempt to pigeon hole them into a "nondisclosure" analysis.

Defendant's discussion of the "duty to disclose" as a litmus test for satisfaction of the "materially misleading" element is off the mark. The relevant inquiry is whether, *objectively,* Defendant's practices would be "likely to mislead a reasonable consumer acting reasonably under the circumstances."[59]   Of particular relevance to this inquiry here is the fact that "New York courts have held that collecting fees in violation of other federal or state laws may [*per se*] satisfy the misleading element of § 349."[60]   As discussed at length above, Defendant's practices in this case violate New York's Insurance Law, and thus, are misleading as a matter of law.[61]   As one New York court noted on the facts alleged here "[i]n logical terms, it is not plausible to think that a consumer, made aware of the opportunity to save hundreds of dollars, would choose to pay the higher rate and forego a savings mandated by law."[62]

Allegations of nondisclosure and a duty to disclose are not prerequisites to GBL § 349 claims. For example, in *Wilner*, the plaintiffs claimed that the defendant insurer's practice of delaying a timely decision on coverage, thereby forcing insureds to file suit before limitations

---

[59] *Oswego*, 85 N.Y.2d at 26; *see also, Gaidon*, 94 N.Y.2d at 344 (same); *Karlin*, 93 N.Y.2d at 294 (same); *Cohen*, 498 F.3d at 126 (same).
[60] *Cohen*, 498 F.3d at 126 (collecting cases).
[61] *See Id* (vacating dismissal).
[62] *In re Coordinated Title Cases,* 784 N.Y.S. 2d 919, *9 (N.Y.Sup.Ct. 2004).

expired, was a deceptive practice.[63] There was no "nondisclosure," yet the court found that the plaintiffs stated a cognizable GBL§ 349 claim and affirmed the denial of a motion to dismiss.[64]

In any event, even assuming that conduct that is objectively misleading is coterminous with conduct for which there is a duty to disclose, Defendant's cited cases—which do not involve conduct that violates other federal and state laws—shed no light here.[65]    Finally, Defendant's attempt to appeal to the "filed rate" doctrine likewise fails to support its argument for dismissal.[66]    That doctrine, like the Insurance Law in New York, "forbids a regulated entity from charging rates for its services other than those properly filed with the appropriate federal regulatory authority."[67]    However, "the plaintiff[s] [are] not attempting to pay a *lower* rate than the filed rate; rather, [plaintiffs are] simply *attempting to force the defendant to adhere to the approved rate*."[68]

On a motion to dismiss, the question is whether plaintiffs allege that defendant engaged in consumer-oriented misconduct to which is deceptive and materially misleading to a reasonable consumer and which causes damages.[69] Here, Defendant is a title insurer with a legal obligation to charge a specific discounted rate. Defendant has superior knowledge and experience concerning the applicability of the rate. Similarly, Defendant possess facts not available to plaintiffs, such as endorsements applied, concerning the elements of the premium calculation.

---

[63] *Wilner*, 893 N.Y.S. 2d at 211, 216.

[64] *Id* at 218.

[65] *See Gershon v. Hertz Corp.*, 215 A.D.2d 202, (Sup. Ct. 1995) (no GBL § 349 violation with respect to rental car fuel service surcharges or failure to offer advance reservation rate to customers without advance reservation or reservation number) (cited in Defendant's Brief at 17); *Super Glue Corp. v. Avis Rent-a-Car Sys., Inc.*,  159 A.D.2d 68, (Sup. Ct. 1990) (no violation with respect to rental car fuel service surcharges or allegedly duplicative collision damage waiver insurance; company "could not be charged with knowledge superior to that of its customers regarding their own contractual arrangements") (cited in Defendant's Brief at 16-17).

[66] *See* Defendant's Brief at 17 (citing *Marcus v. AT&T Corp.*, 938 F. Supp. 1158, 1169 (S.D.N.Y. 1996)).

[67] *Id.* (internal quotations and citations omitted).

[68] *Lentini v. Fid. Nat'l Title Ins. Co. of N.Y.*, 479 F. Supp.2d 292, 301 (D. Conn. 2007) (denying motion to dismiss claims against title insurer under Connecticut unfair insurance and trade practice act).  *See Cohen*, 498 F.3d at 126-27 (consumers will ordinarily expect that "all fees charged by a respected financial institution . . . were legal").

[69] *Wilner*, 893 N.Y.S2d at 214.

Defendant represented in the HUD-1 settlement statements that the amount charged was correct, but in fact charged in excess of the lawful amount. Defendant's challenged conduct goes beyond mere nondisclosure. Under the broad construction applied to GBL § 349, a reasonable consumer could find this to be a deceptive and misleading practice.

4.    **At the Very Least, the Record Creates a Fact Issue.**

As discussed above, Plaintiffs and the Class maintain that Defendant's conduct is materially misleading as a matter of law.[70] Moreover, even if the conduct here was not *per se* misleading, the question of whether a deceptive practice is likely to mislead a reasonable consumer acting reasonably is typically a question of fact for the fact finder.[71] At the very least, on this motion to dismiss, the "record is . . . inconclusive as to whether a reasonable consumer in plaintiffs' circumstances might have been misled by [Defendant's] conduct."[72]    Thus, at bare minimum, "this is the sort of information that is the subject of discovery."[73]    Accordingly, Defendant's motion to dismiss Plaintiffs' GBL § 349 claim should be denied.

D.    **The Voluntary-Payment Doctrine Does Not Bar the Claims.**

First, the voluntary payment doctrine has no applicability to *mandatory* title insurance rates. Here, the TIRSA guidelines and New York insurance law provide that the discounted rates at issue here "shall" be charged.[74] Thus, the discount is *required* to be given regardless of the state of mind of the consumer. There is no exception to the rates that permits a customer and an insurer to agree to a higher rate than allowed by law. Similarly, a consumer cannot waive the applicability of a mandatory charge. Allowing this defense to a mandatory insurance rate would undermine the entire rate structure, by permitting an insurer to charge whatever price it chooses.

---

[70] *See Cohen,* 498 F.3d at 126 ("New York courts have held that collecting fees in violation of other federal or state laws may violate § 349") (collecting cases).

[71] *See e.g. Wilner,* 893 N.Y.S.2d at 217.

[72] *Oswego,* 85 N.Y.2d at 27.  *See also Cohen,* 498 F.3d at 127 (vacating dismissal and remanding case).

[73] *Pelman v. McDonald's Corp.*, 396 F.3d 508, 512 (2d Cir. 2005) (remanding § 349 case for discovery).

[74] *See In re Coordinated Title Cases,*2004 WL 6903080 at *6.

If the insurer charged $1,000,000.00 for a policy that the law requires be priced at $500.00, and the insured paid it, does that make the charge lawful? Of course not.

Even if the doctrine were potentially applicable here, which it is not, it requires that a plaintiff be aware that he is paying the wrong amount, yet does so anyway, Here, the Complaint properly alleges that Plaintiffs lacked reason to suspect the overcharge and that their excessive payments resulted from a mistake of fact and Defendant's misleading practices. Specifically, the Complaint alleges that Plaintiffs and the proposed class members paid Defendant for premiums under the objectively reasonable belief that the fees being charged were correct.[75]

Moreover, even if Plaintiffs were charged with knowledge of the "rate schedules" as alleged by Defendant, that does not translate to knowledge that they were overcharged and not given the lawful rate. A reasonable consumer would rely on the title insurer and its agent to properly apply the mandatory rates to their transaction. A reasonable consumer could not "back into" the calculation of the proper premium, given only the total amount they were actually charged. The dollar figure of $653.00, standing alone, does not provide sufficient information, even if they had knowledge of and access to the rate rules.

It is simply nonsensical to suggest that plaintiffs and other consumers would knowingly and voluntarily pay a higher rate for insurance than the law allows.[76] As noted above, Plaintiffs were not provided information, such as the endorsements on the policy, sufficient to enable them to even attempt to calculate the premium. Moreover, the HUD-1 affirmatively misrepresented the correct charge. These allegations defeat Defendant's unsupported assertion of "voluntary payment."

New York courts carefully limit the application of the voluntary payment doctrine:

---

[75] *See, e.g.*, Complaint at 7-8.
[76] *See In re Coordinated Title Cases*, 2004 WL 6903080 at * 6 and 8.

> [T]hat common-law doctrine [the voluntary payment doctrine] only 'bars the recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law" (*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526, 760 N.Y.S.2d 726, 790 N.E.2d 1155 [2003], citing *Gimbel Bros v. Brook Shopping Centers, Inc.*, 118 A.D.2d 532, 535-36, 499 N.Y.S.2d 435 [2d Dept. 1986]).  As discussed above, Brissenden's installation claims are predicated on the absence of full disclosure at the time of installation, as required by 47 CFR § 76.1622(a). This is not a situation, as in *Dillon*, where payments were made as a matter of convenience with full disclosure.[77]

Thus, "[t]he voluntary payment doctrine, which bars recovery of payments voluntarily made with full knowledge of the facts and in the absence of fraud or mistake of material fact of law . . . does not apply here, where the overpayments were clearly made to defendants based on a mistake of fact, namely, the amount of fees actually owed by plaintiff to defendants."[78]  Moreover, full knowledge of the facts does not include allegedly "imputed" facts, as argued by Defendant.

In contrast to the circumstances presented by these authorities and this case, the voluntary payment doctrine may apply when "plaintiffs paid the subject charges without protest or even inquiry, and were not laboring under any material mistake of fact when they did so."[79]  Thus, for example, in *Gimbel Bros.*, the plaintiff lessee paid its landlord $10 weekly for "Sunday charges" from January 1977 to December 1977.[80]  The "Sunday charges" were then increased by plaintiff's new landlord to $825 per Sunday, but the plaintiff continued to pay these charges from December 1977 through June 1978.[81]  However, in July 1978, the plaintiff asserted that it was not required to make these payments and sought, *inter alia*, to have the payments it already made

---

[77] *Samuel v. Time Warner, Inc.*, 809 N.Y.S2d 408, 418, 10 Misc. 3d 537, 548 (Sup. Ct. N.Y.C. 2005).

[78] *Kirby McInerney & Squire, LLP v. Hall Charne Bruce & Olson, S.C.*, 790 N.Y.S.2d 84, 85 (Sup. Ct. App. Div. 1st Dept. N.Y. 2005); *see also Dupler v. Costco Wholesale Corp.*, --- F.R.D. ---, No. 06-cv-3141 (JFB)(ETB), 2008 WL 321776, *7 (E.D.N.Y. Jan. 31, 2008).

[79] *Westfall v. Chase Lincoln First Bank, N.A.*, 258 A.D.2d 299, 300, 685 N.Y.S.2d 181 (N.Y. Sup. Ct. App. Div. 1st Dept. 1999) (citing *Gimbel Bros. v. Brook Shopping Ctrs.*, 118 A.D.2d 532, 535 (N.Y. Sup. Ct. App. Div. 2d Dept. 1986)).

[80] *Id*. at 533.

[81] *Id*.

returned.[82]  In that instance, the court properly found that the plaintiff did not make the payments pursuant to a mistake of fact.[83]

The cases Defendant cites are distinguishable on their facts.   For example in *Westfall*,[84] where the plaintiffs brought claims after they paid a $5 fee defendant charged them for faxing documents to them, the court found that "nothing in plaintiffs' mortgage prohibited defendants to charge such a fee plaintiffs do not allege that they paid the facsimile fee as a result of any mistake of fact relating thereto, and the facsimile fee charge itself was neither false nor misleading."[85]  This is clearly not the same situation as the case at bar, where Plaintiffs allege, *inter alia*, that Defendant failed to disclose to Plaintiffs and members of the Class in a timely manner, if at all, that, because they refinanced their mortgages or fee interests on the identical premises within ten (10) years from the date of closing of their previously insured mortgage or fee interest, they were entitled to pay a reduced premium, as detailed above. Similarly, it does not address the lack of information to be able to determine whether the credit was given. Defendant also failed to ensure that Plaintiffs and the Class members were charged the proper rates and fees.

In sum, Defendant's argument for application of the "voluntary payment" doctrine ignores the allegations of the Complaint, and defies common sense.  The doctrine cannot be used to undermine mandatory rates.   Accordingly, this ground for dismissal should be overruled.

## IV.
## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss the Complaint in its entirety.

---

[82] *Id.*
[83] *Id.* at 534.
[84] *Westfall v. Chase Lincoln First Bank, N.A.,* 258 A.D.2d 300, 685 N.Y.S.2d 181, 182 (1st Dept. 1999).
[85] *Id* at 300.

21

DATED:  July 2, 2012                    Respectfully submitted,


                                        */s/ Eric G. Calhoun*
                                        **TRAVIS & CALHOUN, P.C.**
                                        Eric G. Calhoun (No. 2299733)
                                        1000 Providence Towers East
                                        5001 Spring Valley Road
                                        Dallas, Texas  75244
                                        (972) 934-4100  Telephone
                                        (972) 934-4101  Facsimile


                                        **MARCUS & CINELLI, LLP**
                                        David P. Marcus (No. 2044097)
                                        N.Y.S. Bar No.: 2044097
                                        2821 Wehrle Dr., Suite 3
                                        Williamsville, New York 14221
                                        (716)565-3800  Telephone
                                        (716)565-3801  Facsimile


                                        **Counsel for Plaintiffs and
                                        Co-Class Counsel**