UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HOWARD PARTELL, JR., and
BONNIE PARTELL, individually, and
on behalf of all others similarly situated,

                    Plaintiffs,

        v.                                          **DECISION AND ORDER**
                                                    12-CV-376S

FIDELITY NATIONAL TITLE INSURANCE
SERVICES, as successor in interest to
Lawyers Title Insurance Corporation,[1]

                    Defendant.


## I.  INTRODUCTION

Named plaintiffs, Howard and Bonnie Partell, bring this putative class action alleging

that Defendant, Fidelity National Title Insurance Corporation ("FNTIC"), unlawfully

overcharged them and other consumers for title insurance.[2] They assert common-law

claims for money "had and received"[3] and unjust enrichment, as well as a claim under New

York's General Business Law ("GBL") § 349.

FNTIC now moves to dismiss the complaint in its entirety. For the following reasons,

that motion is denied.

---

[1]In its notice of removal, Defendant indicated that it was mistakenly sued as First National Title Insurance *Services*, LLC and that Fidelity National Title Insurance *Corporation* is the proper party. The Partells do not dispute this. This Court will therefore refer to Defendant as Fidelity National Title Insurance Corporation and the Clerk will be instructed to amend the caption accordingly.

[2]Jurisdiction appears proper under 28 U.S.C. § 1332. (See Docket Nos. 1, 5.)

[3]"At common law, an action by which the plaintiff could recover money paid to the defendant," see Black's Law Dictionary  33 (9th ed. 2009), which in "equity and good conscience" he should not retain, Parsa v. State, 64 N.Y.2d 143, 148, 474 N.E.2d 235 485 N.Y.S.2d 27 (1984).

1

## II. BACKGROUND

**A.    Facts**[4]

In November of 2003, the Partells secured a mortgage on their home in the amount of $88,000. (Am. Compl., ¶ 6; Docket No. 14.) Three years later, the Partells refinanced their mortgage and obtained a new loan in the amount of $115,000 from Capital One Home Loans, LLC ("Capital One"). (Id., ¶ 7.) As part of that loan agreement, the Partells were required to purchase a title insurance policy protecting Capital One. This condition, called a loan or lender's title policy, is a typical condition imposed by lenders. It protects the lender against defects in title or outstanding liens, but does not benefit the borrower, who must obtain a separate policy. Fulfilling their obligation under the agreement, the Partells paid $653.00 for a lender title policy, which was issued by Defendant, FNTIC. (Id., ¶ 8.)

New York State, however, strictly regulates the premiums that title insurance companies, like FNTIC, are permitted to charge. (Id., ¶ 18.) The Title Insurance Rate Manual for New York State ("Rate Manual") contains rates filed with, and approved by, the New York Superintendent of Insurance; title insurers may not charge rates for lender title insurance policies that deviate from those filed rates. (Id., ¶ 18; N.Y. Ins. Law § 2314.) Although not specifically conceded in the complaint, it appears that the rate FNTIC charged —$653.00—would have been correct if the policy were not issued for a refinanced mortgage.

But because the Partells refinanced their home, and the title remained in their name,

_____

[4]Facts alleged in the Partells' amended complaint – but not labels or legal conclusions – must be accepted as true for the purposes of resolving this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Section 14 of the Rate Manual requires that the policy be discounted by 50%.[5] (Id., ¶ 20.) The Partells, and, allegedly, others like them, were not provided this mandatory discount. (Id., ¶¶ 12, 37–39.) The Partells further allege that FNTIC knew that the title insurance at issue pertained to a refinanced home, but that FNTIC applied the full rate anyway. (Id., ¶ 29.)

This litigation followed.

## B. Procedural History

On April 27, 2012, FNTIC removed this case, originally filed in New York State Supreme Court, to this Court. (Docket No. 1.)

On May 4, 2012, FNTIC filed a motion to dismiss. (Docket No. 6.) Shortly thereafter, however, the Partells amended their complaint (Docket No. 14), prompting FNTIC to renew their motion to dismiss as against the amended complaint (Docket No. 15). Briefing on that motion concluded on July 13, 2012, at which time this Court took the motion under advisement.

## III. DISCUSSION

## A. Motion to Dismiss Standard – Rule 12(b)(6)

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal pleading standards are generally not stringent; Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L.

---

[5]The amount of the discount, and whether it applies at all, is subject to certain conditions. At this time, there is no dispute that the 50% discount applied to the Partells' policy.

The Rate Manual is currently available at: http://www.tirsa.org/TIRSA_Rate_Manual_070111.pdf

Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. <u>ATSI Commc'ns</u>, 493 F.3d at 98. Legal conclusions, however, are not afforded the same presumption of truthfulness. <u>See</u> Iqbal, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. <u>Iqbal</u>, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. <u>Id.</u> at 678; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." <u>Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. <u>Iqbal</u>, 556 U.S. at 679. First, statements that are not entitled to the

presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. See Id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id.

**B. FNTIC's Motion to Dismiss**

FNTIC argues that (1) the Partells' claims are barred because they failed to exhaust their administrative remedies, (2) the Partells have not stated a claim under GBL § 349, and that (3) each of the Partells' claims are barred by New York's "voluntary payment doctrine." Each argument will be addressed in turn.

**1. Exhaustion**

FNTIC contends that the Partell's failure to exhaust their administrative remedies warrants dismissal of this case. In support of this position, FNTIC points to New York State Insurance Law § 2319(b), which requires insurers to provide an avenue of relief for those who believe they were wronged by application of the rating system. In relevant part, it states:

> [E]very insurer or rate service organization shall provide within this state reasonable means whereby any person aggrieved by the application of its rating system may be heard, in person or by an authorized representative, on written request to review the manner in which such rating system has been applied in connection with the insurance afforded or offered.

N.Y. Ins. Law § 2319(b).

"The doctrine of exhaustion 'provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been

exhausted.'" <u>White v. Shull</u>, 520 F. Supp. 11, 12 (S.D.N.Y. 1981) (quoting <u>McKart v. United States</u>, 395 U.S. 185, 193, 89 S. Ct. 1657, 1662, 23 L. Ed. 2d 194 (1969)) (internal quotation marks omitted). The requirement "may arise from explicit statutory language or from an administrative scheme providing for agency relief." <u>Howell v. I.N.S.</u>, 72 F.3d 288, 291 (2d Cir. 1995) (internal citations and quotation marks omitted).

In this, as in any diversity case, this Court is "bound to follow state law on any matter of substantive law." <u>DeWeerth v. Baldinger</u>, 38 F.3d 1266, 1272 (2d Cir.1994). But the New York Court Appeals has not considered whether exhaustion applies in this context, and the question appears to be unsettled in the State's lower courts. Thus, this Court is bound to heed the following axiom: "In deciding a disputed issue of state law in a diversity case, a federal [trial] court should attempt to discern what the highest court of that state would decide." <u>L-Tec Elec. Corp. v. Cougar Elec. Org., Inc.</u>, 198 F.3d 85, 86 (2d Cir. 1999) (per curium).

****

Although the language of Insurance Law § 2319(b) does not explicitly mandate that an aggrieved party *must* resort to the administrative body before he or she may bring a civil suit, FNTIC principally relies on two cases that, it argues, stand for this proposition. These cases will be discussed below.

In <u>Investors Insurance Co. of America v. Karbel Wholesale Automobiles Inc.</u>, the plaintiff, an insurance company, sought to recover $1,092 in unpaid premiums. 148 Misc. 2d 933, 934, 569 N.Y.S.2d 323 (N.Y. App. Term, 1st Dep't 1990). In response, the defendant, who was insured by the plaintiff, asserted that his policy incorrectly classified his business: he did not repair automobiles, he only sold them. <u>Id.</u> Apparently, this

distinction would result in a lower rate. Reversing the trial court, the First Department found that "it is well settled that the defense of improper classification is not within the jurisdiction of the court below and cannot properly be raised in that forum. That issue should have been disposed of by means of an appeal to the administrative rating board and then to the Superintendent of Insurance." Id.

FNTIC also cites the Fourth Circuit Court of Appeals. Like the Partells, the plaintiffs in Arthur v. Ticor Title Insuance Co., asserted that they were entitled to, but did not receive, a discounted title insurance rate when they refinanced their homes. 569 F.3d 154, 161–62 (2009). The court dismissed the claim because the plaintiffs failed to exhaust their administrative remedies, which were available under the Maryland Insurance Code. Id. at 161.

This court, however, finds FNTIC's authority unpersuasive.

First, Arthur is inapposite because it applies Maryland, not New York, law. That this is a distinction with a considerable difference is evident from the court's opinion. It found, "*Under Maryland law*, when the statutory text creating an administrative remedy is not dispositive, there is 'a presumption that the administrative remedy is intended to be primary, and that a claimant cannot maintain the alternative judicial action without first invoking and exhausting the administrative remedy.'" Arthur, 569 F.3d at 161 (emphasis added) (quoting Zappone v. Liberty Life Ins. Co., 349 Md. 45, 706 A.2d 1060, 1069 (1998)). Tellingly, FNTIC waits until its reply papers to point to any analog to such a rule in New York. And even then, the comparison is strained and tenuous.

FNTIC relies on the following language from the New York Court of Appeals: "Where the statute at issue in a dispute does not provide how judicial review may be obtained,

resort must be made to the judicially-created rule that administrative remedies must be exhausted." At first blush, the rule appears applicable to this case. But the court so ruled in the context of tax dispute, where the relevant statute announced that "[t]he review of a decision of the tax appeals tribunal provided by this section *shall be the exclusive remedy available to any taxpayer*." Bankers Trust Corp., v. N.Y.C. Dep't of Fin., 1 N.Y.3d 315, 321, 805 N.E.2d 92 (2003) (emphasis added). The Court of Appeals found that courts lack discretion to absolve a claimant of the requirement to first resort to administrative remedies when "the Legislature itself has specifically delineated the *exclusive steps* a party must undertake in order to seek judicial relief." Id. at 322 (empahsis added). Of course, the legislature delineated no such "exclusive steps" here. Nor does Insurance Law § 2319(b) make resort to the Superintendent of Insurance the "exclusive remedy."

FNTIC's reliance on Arthur, and by extension, Bankers Trust, therefore proves unavailing because the New York statute, unlike in Maryland, does not require exhaustion.

Indeed, this Court must give proper weight to the text of Insurance Law § 2319(b) itself. Most notably, and as suggested above, the statute does not require claimants to avail themselves of this remedy. Rather, the onus appears to be on the insurer, who "*shall provide* means whereby any person aggrieved by the application of its rating system *may be heard*." N.Y. Ins. Law §2319(b). It thus appears to be a permissive, rather than a mandatory, system. This Court therefore finds that the Court of Appeals would refuse to fashion a requirement that the New York State Legislature did not.

Karbel does not save FNTIC's argument. By the plain language of the court's decision, that case is limited to instances where the defendant asserts a defense of

"improper classification." It says nothing about violations of Section 14 of the Rate Manual. And here, unlike in Karbel, there is no factual dispute about what classification applies.

By contrast, Good v. American Pioneer Title Insurance Co., speaks to this very issue. 12 A.D.3d 401, 783 N.Y.S.2d 841 (2d Dep't 2004). There, as here, the plaintiffs alleged that the defendant charged a title insurance premium in excess of the applicable rate published in the Rate Manual. Id. at 402. The Second Department upheld the trial court's decision refusing to dismiss the complaint based on the doctrine of primary jurisdiction. Id. "Under that doctrine, a court may refrain from exercising jurisdiction over a matter where an administrative agency also has jurisdiction and a determination of the question involved depends upon the specialized knowledge and experience of the administrative agency." Id. The court found that "[t]he proper interpretation of the Rate Manual, and the defendant's alleged violation thereof, presented questions of law cognizable by the court." Id. The implication is inescapable: the Good court rejects—or, at the very least, *would* reject—the proposition that a claimant must exhaust his or her administrative remedies in a case such as this. For several reasons, this Court agrees.

First, while this Court is not obligated to follow the Second Department's ruling, it must be given "proper regard." Travelers Ins. Co. v. 633 Third Associates, 14 F.3d 114, 119 (2d Cir. 1994) ("Where there is no decision by the state's highest court[,] then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State."). As such, the Good court's ruling is persuasive by virtue of the simple fact that it contemplated an issue nearly identical to the one before this court. The same cannot be said of Karbel.

Second, the Court's reasoning is sound. As recognized by the court in Good, the

9

primary jurisdiction doctrine permits an administrative body, which presumably has an elevated level of expertise, the opportunity to apply that knowledge. But resort to such a body is not necessary where such expertise is not implicated. Indeed, as the <u>Good</u> Court found, "the [State] Supreme Court correctly determined that the relevant provisions of the Rate Manual did not involve such intricate and technical matters as would warrant referral to the rate-making agency." 12 A.D.3d at 402.

Despite FNTIC's claims to the contrary, this case is not so "nuanced" that a specialized tribunal is necessary. (<u>See</u> Def.'s Reply Mem. of Law, at 5; Docket No. 22.) FNTIC correctly notes that the Partells do seem to add some complication to this case in their memorandum of law,[6] but the principle issue is uncomplicated: did FNTIC charge the full rate when it should have charged the discounted rate?

In sum, because Insurance Law § 2319(b) does not require that claimants exhaust their administrative remedies, and because resolution of the Partell's claim does not require this Court to consider technical matters more appropriately left to the Superintendent of Insurance, FNTIC's motion to dismiss is denied.

## 2. GBL § 349

New York's General Business Law § 349, part of what is known as New York's Consumer Protection Act, prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 349; <u>see also</u> <u>Pelman ex rel. Pelman v. McDonald's Corp</u>., 396 F.3d 508, 510–11 (2d Cir. 2005).

To state a claim under GBL § 349, a plaintiff must allege that: (1) the act or practice

---

[6]The Partells discuss allegedly misleading HUD-1 forms in their opposing memorandum, but not in their Complaint.

was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009). "'Deceptive practices' are acts which are dishonest or misleading in a material respect," while "'[d]eceptive acts' are defined objectively . . . as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." Id.

The Partells allege that FNTIC violated this statute when it charged the incorrect rate. FNTIC responds by noting that the rates are public information; it argues that because the Partells were in as good a position as FNTIC to know the correct rate, it cannot be held liable under GBL § 349.

****

FNTIC's alleged wrongful act—overcharging—is not the type of conduct typically prohibited by this law. Consumers are often misled into overpaying through deceitful representations, but it is less certain whether one can be mislead when the defendant simply overcharges the consumer. This is especially true when, as FNTIC points out, the Partells could have learned the correct rate on their own. See, e.g., Zuckerman v. BMG Direct Mktg., Inc., 290 A.D.2d 330, 737 N.Y.S.2d 14 (1st Dep't 2002) (holding shipping and handling fees not deceptive where amounts disclosed); Sands v. Ticketmaster-New York, Inc., 207 A.D.2d 687, 616 N.Y.S.2d 362 (1st Dep't 1994) (same regarding disclosed ticket service fees).

Even the Partells are uncertain how to define FNTIC's conduct in this case. They allege at once that FNTIC failed to disclose the proper rate, and that this is not a failure-to-disclose case. (Compare Am. Compl. ¶ 69 with Pl.'s Mem. of Law at 15-16; Docket No. 20.) If it were simply that FNTIC failed to disclose the proper rate, as FNTIC argues, the

claim may be subject to dismissal; New York courts regularly dismiss claims where the non-disclosed information was not solely within the possession of the defendant. See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 27, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995).

But this is not such a case. Rather, considering GBL § 349's broad scope, see Karlin v. IVF America, Inc., 93 N.Y.2d 282, 290, 690 N.Y.S.2d 495, 712 N.E.2d 662 (1999), this Court finds that in charging the rate that it did, FNTIC implicitly represented that the rate—which, it bears repeating, is set by law—was correct. See Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007) (reversing dismissal of GBL § 349 claim because alleged overcharge may have violated the law, satisfying GBL § 349's misleading requirement); Negrin v. Norwest Mortgage, Inc., 263 A.D.2d 39, 50, 700 N.Y.S.2d 184, 193 (2d Dep't 1999) ("Allegations of a bank's unilateral imposition of illegal and/or unwarranted fees upon its customers state a valid claim [under § 349]."). Thus, it is not simply that FNTIC failed to disclose the correct rate, rather, it deceived the Partells into the thinking the charged rate was correct. See Cohen, 498 F.3d at 126 ("Certainly, [defendant] Chase does not suggest that, in the absence of indications to the contrary, a consumer might not reasonably assume that all fees charged by a respected financial institution such as Chase were legal."). At this stage of the litigation, it is enough to conclude that a jury could find that a reasonable consumer, while closing on a mortgage, would believe that the rate he or she was charged for title insurance (to the benefit of lender) would be the lawful rate. See Id.

Accordingly, the Partells' allegation that FNTIC failed to follow the law by overcharging them for title insurance states a claim under GBL § 349.

12

FNTIC's motion, on this ground, is denied.

### 3. Voluntary Payment Doctrine

FNTIC's last argument is that the Partells' claims must be dismissed under the common-law voluntary payment doctrine, which "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of fact or law." Dillon v. U-A Columbia Cablevision of Westchester, Inc., 100 N.Y.2d 525, 526, 790 N.E.2d 1155, 760 N.Y.S.2d 726 (2003).

FNTIC's argument is simple enough: the Partells, with full knowledge of the amount being charged, voluntarily paid it without protest or inquiry. As such, they argue, this doctrine applies and the claims must be dismissed.

Although FNTIC points to several cases that it contends support its position, the doctrine seems ill-fitting to a claim such as this.

In Westfall v. Chase Lincoln First Bank, N.A., for example, the defendant overcharged for certain recording fees, and the First Department found that:

> Plaintiffs admit that they never actually gave any thought to the recording fee, or to defendants' basis for charging it, prior to paying off their mortgage, and they therefore cannot claim to have been misled by any implicit representation that the actual cost of recording the discharge was the same as the amount of the recording fee charged by defendants."

258 A.D.2d 299, 300, 685 N.Y.S.2d 181 (1st Dep't 1999).

FNTIC argues that this case should guide this Court. But the extra charge at issue there resulted in a breach of the parties' private contract, not, as here, a breach of a law that mandates a specified rate. Indeed, if this Court were to apply the voluntary payment doctrine to this case, it would eviscerate the intended protections of the Insurance Law.

<u>See</u> N.Y. Ins. Law § 230 ("The purpose of this article is to promote the public welfare by regulating insurance rates to the end that they not be excessive, inadequate or unfairly discriminatory . . ."); <u>see also</u> N.Y. Ins. Law § 2314 ("No authorized insurer shall . . . knowingly, charge or demand a rate or receive a premium which departs from the rates, rating plans, classifications, schedules, rules and standards in effect on behalf of the insurer, or shall issue or make any policy or contract involving a violation thereof."); <u>Transp. Ins. Co. v. Star Indus., Inc.</u>, No. CV 01-1341 (ARL), 2005 WL 1801671, at *7 n. 6 (E.D.N.Y. July 28, 2005) (citing <u>Am. Motorists Ins. Co. v. N.Y. Seven-Up Bottling Co.</u>, 18 A.D.2d 36, 38, 238 N.Y.S.2d 80 (1st Dep't 1963) (explaining that where insurance premium rates were properly filed, the insurer cannot deviate from those rates and that "[n]o inadvertence or mistake of the insurance company can prevent the collection of the proper premium").

In other words, if this Court were to adopt FNTIC's position, insurers could violate the law with impunity, unless the consumer conducted independent research and contested the charge. This appears contrary to the legislative intent in enacting the law. <u>See</u> N.Y. Ins. Law § 230; <u>C.f.</u> <u>ATM One v. Landaverde</u>, 2 N.Y.3d 472, 476–477, 812 N.E.2d 298, 779 N.Y.S.2d 808 (2004) ("[L]egislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the enactors."). This distinction sets this case apart from <u>Westfall</u> and similar cases cited by FNTIC. <u>See, e.g.</u>, <u>Morales v. Copy Rights, Inc.</u>, 28 A.D.3d 440, 441, 813 N.Y.S.2d 731 (2d Dep't 2006) (considering application of this doctrine to an overcharge in violation of a provision of New York's Civil Procedure Law and Rules, which, clearly has no consumer protection component).

In any event, even if it were applicable, the voluntary payment doctrine is defense.

14

And a complaint may be dismissed on the grounds of an affirmative defense only if "the defense appears on the face of the complaint." Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003). There is nothing in the pleadings to suggest that the Partells knew that the correct rate was actually half of the rate they were charged, but paid it regardless. As the Second Circuit found in Spagnola, "the pleadings before the district court do not establish whether [the plaintiffs] knew or should have known that the increased amounts were not based on [lawful rates], and [the plaintiff] was not required to preemptively plead facts refuting the voluntary payment doctrine."  574 F.3d 6 at 73. On this basis, and drawing all inferences in the plaintiffs favor, the court concluded that the voluntary payment doctrine could not stand as a basis for dismissal. The same is true here.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 15) is DENIED.

FURTHER, the Clerk of Court shall amend the caption, changing Fidelity National Title Insurance Services, LLC to Fidelity National Title Insurance Corporation.

SO ORDERED.

Dated:      October 23,  2012
              Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court